692 P.2d 280

**Teresa V. BARRIO, individually, Plaintiff/Appellant,**

v.

**SAN MANUEL DIVISION HOSPITAL FOR MAGMA COPPER COMPANY; Ruth Elizabeth Findlay, individually and as personal representative of the Estate of Francis M. Findlay, M.D.; Franc Brodar, M.D., and Betty Brodar, husband and wife, Defendants/Appellees.**

**No. 17165–PR.**

Supreme Court of Arizona, En Banc.

Dec. 10, 1984.

Haralson, Kinerk & Morey by Burton J. Kinerk, William H. Ricker, Tucson, for appellant.

Robbins & Green by Richard W. Abbuhl, Brian Imbornoni, Phoenix, for appellees.

FELDMAN, Justice.

Teresa V. Barrio (plaintiff) was born on August 8, 1962 at the hospital operated by Magma Copper Company's (Magma) San Manuel Division. In 1982 she filed suit against the hospital and two of the doctors who practiced there (defendants), alleging that medical care rendered at the time of her birth resulted in serious and permanent injuries, including paralysis and a loss of intellectual function. The filing was timely under Ariz.Rev.Stat. § 12–502, the general tolling statute that covers the effect of minority, insanity or imprisonment on the time allowed for bringing any personal in-

jury action; it was, however, barred under Ariz.Rev.Stat. § 12–564(D), a special statute of limitation that applies only to medical malpractice actions. Defendants moved for summary judgment on the ground that the action was time barred, and the trial court granted the motion. The court of appeals affirmed. *Barrio v. San Manuel Hospital*, 143 Ariz. 114, 692 P.2d 290 (1983).

The only issue presented in the petition for review was the following: does A.R.S. § 12–564(D), creating a separate tolling provision for infants injured by health care providers, violate the equal protection clause of the fourteenth amendment of the United States Constitution and the privileges and immunities clause of the Arizona Constitution? We granted plaintiff's petition for review because of the importance of the constitutional claim presented. Rule 23(c), Ariz. R.Civ.App.Proc., 17A A.R.S.

After granting the petition, we ordered the parties to file supplemental briefs, Rule 23(f), id., discussing the following issues:

1. Is A.R.S. § 12–564(D) subject to the strict scrutiny test because of its effect upon the rights guaranteed by art. 18, § 6 of the Arizona Constitution?

2. Is A.R.S. § 12–564(D) as applied in this case unconstitutional because of art. 18, § 6 of the Arizona Constitution?

3. Given the provisions of A.R.S. § 12–502 as applied to incompetent plaintiffs in other tort cases, do the provisions of A.R.S. § 12–564(D) violate equal protection?

4. Is A.R.S. § 12–502 applicable?

Since we find that the second issue is dispositive, we do not reach the equal protection question. *But see Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984).

### FACTS

At the time of Teresa's birth, Drs. Franc Brodar and Francis Findlay were the attending physicians in San Manuel Hospital. They were employees of Magma. It is alleged that they allowed Teresa's mother to go through three days of difficult labor before delivering the child by cesarean sec-

tion, even though a third physician had informed them that cesarean delivery was medically indicated for the patient. It is further alleged that these acts of negligence resulted in serious injuries, including partial paralysis, from which Teresa is still suffering.

Teresa's malpractice action was filed on February 11, 1982. This would have been timely for any other action because A.R.S. § 12–502 provides that the period of legal disabilities resulting from minority and incompetency "shall not be deemed a portion of the period limited for commencement of the action." The effect of § 12–502 and § 12–542 (which govern almost all other tort actions) would have been to give Teresa until her twentieth birthday to bring the action. However, in 1976, the legislature enacted the Medical Malpractice Act, § 12–561, *et seq.* Section 12–564 of the Act contains a special statute of limitations for situations in which an action for personal injury is asserted against a licensed health care provider. Subsection D of § 12–564 states:

> Notwithstanding the provisions of § 12–502, in an action on behalf of a minor injured under the age of seven, the applicable period of limitations [three years] begins to run when the minor reaches his or her seventh birthday, or on death, whichever occurs earlier.

If that statute is valid, Teresa's action was barred and was properly dismissed by the trial court. Plaintiff argued in the court of appeals that the statute of limitation as applied to minors (if the injury occurred before the minor was seven years of age, then the action is barred after the minor reaches the age of ten) was a denial of equal protection because the state could demonstrate no compelling interest to support the curtailment of the right to bring the action when no other tort claimant was placed under such a disability. Defendants replied that the rational basis test was applicable and attached an extensive legislative history to demonstrate the rational basis of the legislature's decision. The court of appeals affirmed, concluding that "the

legally imposed status of minority [was] not a suspect classification meriting strict judicial scrutiny" and that "the rational basis test [was] the appropriate standard for reviewing the constitutionality of A.R.S. § 12–564(D)." (142 Ariz. at 72–3, 688 P.2d at 964–65.) The court therefore found that the statute under consideration did not violate the equal privileges and immunities provision of art. 2, § 13 of the Arizona Constitution or the equal protection provision of the fourteenth amendment of the United States Constitution.

In *Kenyon v. Hammer,* supra, we recently held that the right to bring a common law action for negligence was guaranteed under article 18, § 6 of the Arizona Constitution. We concluded, therefore, that the rational basis test was not the appropriate level of scrutiny. (142 Ariz. at 83–4, 688 P.2d at 975–76.) Given the decision in *Kenyon,* there is considerable doubt as to the viability of the rationale employed by the court of appeals in deciding the case at bench. However, we need not reach that question since we resolve the case upon a basis requiring a less convoluted analysis than that necessary for disposition of the equal protection issue.

### THE ISSUE

In actions against licensed health care providers, A.R.S. § 12–564(D) requires that a minor injured under the age of seven years bring his or her action for damages before reaching age ten; it expressly excludes the provisions of A.R.S. § 12–502, which, in all other actions tolls the running of a statute of limitations during a minor's disability. Plaintiff argues that these provisions of § 12–564(D) are void under article 18, § 6, which provides as follows:

> The right of action to recover damages for injury shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

■ We note that plaintiff did not advance this argument either to the trial court or the court of appeals until the motion for rehearing. Defendants argue that we should not consider issues not raised in the trial court. Generally, this is correct, but a well recognized exception to that rule exists when the question is an issue of "general statewide significance." *Ruth v. Industrial Commission,* 107 Ariz. 572, 574, 490 P.2d 828, 830 (1971) (considering the validity of A.R.S. § 23–1023 under article 18, § 6, of the Arizona Constitution when the issue had not been raised before the trial court or the court of appeals). Nor is the issue one that turns upon disputed evidence. There is no necessity in this case for a trial judge to determine facts. We believe that the constitutional issue in the case at bench is sufficiently important that it should be considered even though not raised in the trial court. We therefore allowed the parties to direct supplemental briefs and oral arguments to the issue. We now turn to the merits.

■ Article 18, § 6, prohibits "abrogation." If the statute of limitations in question effectively abrogates the damage action, it is invalid under the constitution. *Kenyon v. Hammer,* supra, 142 Ariz. at 74, 688 P.2d at 966; *id.* at 88, 688 P.2d at 980 (Hays, J., concurring). On the other hand, if § 12–564(D) merely "regulates" the time to bring the action, then article 18, § 6 would not be offended because the legislature has the power to set reasonable limits on the time in which to exercise the right guaranteed by the constitutional provision. *Kenyon,* supra, 142 Ariz. at 87, 688 P.2d at 979; *Rutledge v. State,* 100 Ariz. 174, 180, 412 P.2d 467, 472 (1966).

■ We must therefore determine whether we are dealing in this case with abrogation or regulation. In so doing, however, we must bear in mind that we have recently recognized that a cause of action to recover damages for negligence is a "fundamental right" guaranteed by article 18, § 6. *Kenyon,* supra, 142 Ariz. at 83–4, 688 P.2d at 975–76; *id.* at 88, 688 P.2d at 980 (Hays, J., concurring).

### REGULATION OR ABROGATION

Some states, particularly those which do not view the common law action for negli-

gence as a fundamental right, have considered statutes of limitation and repose that bar minors' claims and have found that such statutes do not offend guarantees of due process or equal protection. *See,* e.g., *Johns v. Wynnewood School Board of Education,* 656 P.2d 248, 249 (Okl.1982); *Licano v. Krausnick,* 663 P.2d 1066, 1068 (Colo.App.1983); *DeSantis v. Yaw,* 290 Pa.Super. 535, 434 A.2d 1273 (1981) (upholding limitation statute that barred minor's action for automobile injuries on the authority of the Pennsylvania Supreme Court's decision in *Von Colln v. Pennsylvania Railroad Co.,* 367 Pa. 232, 80 A.2d 83 (1951), but criticizing the rule)

The *DeSantis* court noted the various salutary objectives to be gained by strict application of the statute of limitations. These include forcing claimants to bring their actions while the evidence is fresh, promoting repose, giving stability to human affairs, stimulating claimants "to activity," and punishing the dilatory. However, as the court then notes

> This [argument] ... places tremendous importance on a public policy favoring repose of actions and punishment for delay, while paying almost no attention at all to what certainly appears to be a violation of a fundamental right: a chose in action is a form of personal property that without question now belongs to the injured child itself, and yet he is legally debarred from pursuing his claim.
>
> The minor's tender age has long been recognized as a legal disability, merely a lack of capacity, and *not* a punishable lack of moral fiber. A statute designed to "force" a claimant incapable of acting to act is certainly suspect ...

*DeSantis v. Yaw,* 434 A.2d at 1276.

This view has been shared by a number of recent cases in which various courts have held that statutes such as § 12–564(D) are unconstitutional. *See,* e.g., *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983) (statute violates the open court—due process provision of the state constitution); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980) (statute violates equal protection because it

denies minors who are plaintiffs in medical malpractice actions the protection of the usual tolling statute); *Tafoya v. Doe,* 100 N.M. 328, 670 P.2d 582 (App.1983) (application of the notice provisions of the Tort Claims Act to minors violates equal protection); *Hunter v. North Mason High School,* 12 Wash.App. 304, 529 P.2d 898 (1974) aff'd, 85 Wash.2d 810, 539 P.2d 845 (1975) (120 day notice statute for actions against political subdivisions would violate basic concepts of due process and equal protection if applied to minors); *Schwan v. Riverside Methodist Hospital,* 6 Ohio St.3d 300, 452 N.E.2d 1337 (1983) (statute's internal classification between minors above and below the age of ten violates equal protection.)

States which have held statutes of repose unconstitutional have generally done so under the "open court" provisions of their respective constitutions. *Kenyon, supra,* 142 Ariz. at 73, 688 P.2d at 965. *See Sax, supra; Schwan, supra,* at 1340–41 (Brown, J., concurring). As in *Kenyon,* our path through conflicting decisions is illuminated by our own constitution. Article 18, § 6 is stronger and more explicit than the open court provisions contained in other state constitutions. *Kenyon, supra,* 142 Ariz. at 74, 688 P.2d at 966. The clause forbidding "abrogation" was made a part of our constitution for a very specific reason. Justice Lorna Lockwood described that reason in the following words:

> The case law is replete with the history of the constitutional provision in question. According to the authorities the provision was enacted to elevate the common law action of negligence to constitutional stature [in order] to preserve the right inviolate.

*Ruth v. Industrial Commission,* 107 Ariz. at 575, 490 P.2d at 831.

Defendants argue that *Rutledge v. State, supra,* establishes the principle that reasonable statutes of limitation are not a species of abrogation of the right to bring an action, so that the legislature is free to enact any reasonable statute it chooses. In *Rutledge* we upheld a two year statute of

limitations for a plaintiff attempting to assert a claim in inverse eminent domain. We acknowledged that even the constitutional right to recover damages for the taking of property was subject to legislatively enacted time barriers. We have no hesitation in making the same statement with regard to tort claims against those who render medical services. However, *Rutledge* does not stand for the constitutionality of a statute which would require a claimant in inverse eminent domain to act against the state before he reached the age of ten.

We believe that the test for differentiation between regulation and abrogation has already been formulated by this court. In *Ruth,* we acknowledged that the abrogation clause is implicated when the right of action is "completely abolished." We went on to cite with approval the following language:

> If [the statute] ... were to be construed as taking away the right to pursue the constitutional action of negligence without granting a reasonable *election* to all persons entitled thereto, it would indeed be unconstitutional....

*Ruth v. Industrial Commission,* 107 Ariz. at 575, 490 P.2d at 831, quoting from *Moseley v. Lily Ice Cream Co.,* 38 Ariz. 417, 421, 300 P. 958, 959 (1931) (emphasis added in *Ruth*).

In *Moseley* we held that § 1435 of the Revised Code of 1928 was constitutional, even though it deprived injured workmen who had accepted workmen's compensation benefits of their right to bring a common law action for negligence. We emphasized that the workman was permitted "after injury, to elect between acceptance of workmen's compensation benefits and pursuit of the common law negligence act." We found this to be a reasonable election and held the statute valid under article 18, § 6. We had previously held that a statute which required such an "election" *before* the injury occurred was invalid under arti-

cle 18, § 8, for failure to give the injured workman the constitutionally guaranteed option to bring the common law negligence action. *See Industrial Commission v. Crisman,* 22 Ariz. 579, 199 P. 390 (1921); *Consolidated Arizona Smelting Co. v. Ujack,* 15 Ariz. 382, 139 P. 465 (1914).[1]

The test of "reasonable election" as the distinction between regulation and abrogation was followed by this court in *Kilpatrick v. Superior Court,* 105 Ariz. 413, 466 P.2d 18 (1970) and *Ruth v. Industrial Commission, supra,* and is, we believe, still a proper test. The legislature may regulate the cause of action for negligence so long as it leaves a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action. *Kenyon, supra,* 142 Ariz. at 88, 688 P.2d at 980 (Hays, J., concurring.) The intent of our unique constitutional provisions was to enact a "different and more advanced" policy ... "which made it possible to enforce in court a claim for personal injury or death without the necessity of overcoming practically insurmountable defenses." *Industrial Commission v. Crisman,* 22 Ariz. at 595, 199 P. at 395 (McAlister, J., concurring).

Simply put, then, the ultimate question here is whether a statute which requires a minor injured before reaching the age of seven to sue for such injuries before reaching age ten is one which allows the minor a reasonable choice of alternatives. Is this a reasonable regulation of the manner and time for bringing the action?

We have held that "an infant cannot bring or defend a legal proceeding in person." *Pintek v. Superior Court,* 78 Ariz. 179, 184, 277 P.2d 265, 268 (1954). We are aware, of course, that action can be brought on behalf of the minor by a next friend, guardian ad litem, or general guard-

---

1. Art. 18, § 8 was subsequently amended, and in its present form permits "election" of remedies before injury.

ian. *Pintek, supra.* No doubt, most claims of minors are so presented. We are well aware that where a chance of substantial recovery exists, there is no lack of advocates willing to undertake appropriate procedures to find and appoint a guardian ad litem or to obtain a "next friend" so that the action may be brought. While the vast majority of claims on behalf of injured minors will still be brought within a relatively short time after the injury occurs, this all depends upon good fortune; the minor himself is helpless, particularly when under ten years of age. The minor possesses a right guaranteed by the constitution, but cannot assert it unless someone else, over whom he has no control, learns about it, understands it, is aware of the need to take prompt action, and in fact takes such action.

Does the statute bar the action without leaving the claimant a reasonable choice of alternatives? In *Kenyon,* two members of this court stated that a statute which "abrogates an action for damages even before the action ... can reasonably be discovered is unconstitutional." *Kenyon, supra,* 142 Ariz. at 88, 688 P.2d at 980 (Hays, J., and Holohan, C.J., concurring); *see also id.,* at 78 n. 8, 688 P.2d at 970 n. 8. Even if a minor ten years of age or younger can discover (realize) the existence of the injury, he is legally incapable of bringing the action, and must rely upon others. We agree with the Texas court that "it is neither reasonable nor realistic to rely upon parents, who may be ignorant, lethargic, or lack concern, to bring the action." *Sax, supra,* at 667. We recognize, also, that some children are without parents or have parents who do not fulfill commonly accepted parental functions. The statute makes no exceptions for children who have unconcerned parents, children in foster care, or those in institutions; it applies alike to children who are precocious and those who are retarded, those who are normal and those who are brain injured. It applies to those with guardians and those without.

A foster mother may be honestly dedicated to hot meals and clean linen and emotional support and quail at the thought of embarking upon several years of legal battle for a member of her changeable brood. As to parents themselves, some are lazy or frightened or ignorant or religiously opposed to legal redress. Still, they have *their* remedy available to them if they choose to use it. A child does not.

*DeSantis v. Yaw,* 434 A.2d at 1277 (emphasis in original.)

We hold that a statute which requires a minor injured when below the age of seven to bring the action by the time he reaches the age of ten—regardless of his ability to do so, and without concern for the nature of his adult caretakers—does not provide reasonable alternatives. The statute abolishes the action before it reasonably could be brought, in violation of the fundamental constitutional right guaranteed by article 18, § 6. We hold, therefore, that § 12–564(D) is unconstitutional. The provisions of the tolling statute, A.R.S. § 12–502, which apply to all other actions and claims of minors, are applicable to medical malpractice actions.

The opinion of the court of appeals is vacated. The judgment entered by the trial court is reversed. The action is remanded for further proceedings not inconsistent with this opinion.

HOLOHAN, C.J., HAYS, J., and KLEINSCHMIDT and CORCORAN, Judges, concur.

NOTE: Vice Chief Justice GORDON and Justice CAMERON did not participate in the determination of this matter. Judges KLEINSCHMIDT and CORCORAN, of the Court of Appeals, Division One, were called to sit in their stead.